**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | | |
|---|---|---|
| **WANDA RIDDLE,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **VS.** | ) | **CV-01-HS-1058-M** |
| | ) | |
| **FONTAINE SPECIALIZED, INC.,** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |

**MEMORANDUM OF DECISION**

The court has before it the June 27, 2002 motion (doc. #16) of defendant

Fontaine Specialized, Inc. for summary judgment.  Pursuant to the court's July 1,

2002 order (doc. #18), the motion was deemed submitted, without oral argument,

on July 19, 2002.

**I. Procedural History**

Plaintiff Wanda Riddle commenced this action on April 27, 2001 by filing a

complaint in this court against Fontaine Specialized, Inc., alleging that she was

wrongfully terminated in violation of the Age Discrimination in Employment Act

("ADEA"), 29 U.S.C. §§ 621, et seq. and Title VII of the Civil Rights Act of 1964

("Title VII"), 42 U.S.C. § 2000e et seq.  (See Compl.)  Defendant's June 27, 2002

motion for summary judgment asserts that there is no genuine issue of material

fact and that defendant is entitled to judgment as a matter of law.  (See generally Def.'s Br. Supp. Summ. J.)

On June 27, 2002, defendant also filed a brief and evidence[1] (doc. #17) in support of its motion for summary judgment.  Plaintiff filed a brief (doc. #22) and evidence[2] (doc. #21) in opposition to the motion on July 29, 2002.  The court has considered all of the briefs and the evidence.

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file,

---

[1] Defendants submitted the following evidence: excerpts from the deposition of William Breeden; four personnel action requests for Fontaine Specialized, Inc. ("FSI") employee Joshua Lee Walker reflecting pay increases and/or promotions; The Marmon Group Policy on Antitrust Laws, signed by Joshua Lee Walker; excerpts from the deposition of Max Dover; excerpts from the deposition of Wanda Riddle; and excerpts from the deposition of James Wilfore.

[2] Plaintiff submitted the following evidence:  the deposition of Wanda Riddle; the job description of a production control supervisor at FSI; a personal action/discipline form for plaintiff dated May 19, 1999; plaintiff's application for employment with defendant, signed by plaintiff; the deposition of James Wilfore; the deposition of William Breeden; an employee list from FSI dated Jan. 1, 2000; an employee list from FSI dated Jan. 1, 1999; a list of FSI employees who were terminated between Feb. 1998 and May 2001, including plaintiff; four personnel action requests for FSI employee Randy Starnes reflecting pay increases and/or promotions; The Marmon Group Policy on Antitrust Laws, signed by Randy Starnes; The Marmon Group Invention, Conflict of Interest, Confidentiality Policy and Agreement, signed by Randy Starnes; four personnel action requests for FSI employee Joshua Lee Walker reflecting pay increases and/or promotions; The Marmon Group Policy on Antitrust Laws, signed by Joshua Lee Walker; a list of FSI employees who were hired between Jan. 1998 and Nov. 2001; the job descriptions of a production control assistant and master scheduler at FSI; the deposition of Max Dover; Defendant's Response to Plaintiff's First Interrogatories and Request for Production; FSI's responses to information requested by the EEOC when it was investigating plaintiff's charge; and the Notice of a Charge of Discrimination.

together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law."

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transport, 229

F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always

bears the initial responsibility of informing the court of the basis for its motion and

identifying those portions of the pleadings or filings that the moving party believes

demonstrate the absence of a genuine issue of material fact.  Celotex Corp., 477

U.S. at 323.  Once the moving party has met its burden, Rule 56(e) requires the

nonmoving party to go beyond the pleadings and by her own affidavits, or by the

depositions, answers to interrogatories, and admissions of file, designate specific

facts showing that there is a genuine issue for trial.  Id. at 324.

The substantive law will identify which facts are material and which are

irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Chapman,

229 F.3d at 1023.  All reasonable doubts about the facts and all justifiable

inferences are resolved in favor of the nonmovant.  Chapman, 229 F.3d at 1023;

Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is

genuine "if the evidence is such that a reasonable jury could return a verdict for

the nonmoving party." Anderson, 477 U.S. at 248; Chapman, 229 F.3d at 1023.  If

the evidence is merely colorable, or is not significantly probative, summary

judgment may be granted.  <u>Anderson</u>, 477 U.S. at 249-50.  The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  <u>See Fitzpatrick</u>, 2 F.3d at 1115-17 (citing <u>United States v. Four Parcels of Real Property</u>, 941 F.2d 1428 (11th Cir. 1991) (<u>en banc</u>)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact (i.e. facts that would entitle it to a directed verdict if not controverted at trial).  <u>Fitzpatrick</u>, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.  The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to

<u>affirmatively</u> show the absence of evidence in the record to support a judgment for the nonmoving party on the issue in question. This method requires more than a simple statement that the nonmoving party cannot meet its burden at trial but does not require evidence negating the nonmovant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the nonmoving party's case. <u>Fitzpatrick</u>, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the nonmoving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts. <u>Lewis v. Casey</u>, 518 U.S. 343, 358 (1996) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992)).

### III. Relevant Undisputed Facts[3]

Defendant Fontaine Specialized, Inc.[4] ("FSI") manufactures specialized flat-

---

[3]  If the facts are in dispute, they are stated in the manner most favorable to the nonmoving party.  <u>See</u> <u>Fitzpatrick</u>, 2 F.3d at 1115.

[4]  At the time Riddle was hired, Fontaine Specialized, Inc. ("FSI") was owned by Fontaine Trailer Company, which ran FSI as a separate company.  (Wilfore Dep. at 6-7.)  By April 2000, Fontaine Specialized, Inc. had become a division of Fontaine Trailer Company and was no longer

bed semi trailers at its plant in Springville, Alabama.  (See Wilfore Dep. at 10-12.)

Approximately 250 employees work at the Springville plant.  (Id. at 12.)  FSI hired

Wanda Riddle to work in its production control department on or about May 15,

1995.  (Riddle Dep. at 12, 13; Compl. ¶ 5.)  Riddle's job title was referred to as

both production control supervisor and production control scheduling.  (Dover

Dep. at 67; Riddle Dep. at 13.)  Riddle administered the scheduling and inventory

control system for the plant, which was the Materials Requirement Planning

("MRP") system during her tenure at FSI.  (Riddle Dep. at 30-31.)  To run the

MRP system, she would input the trailers scheduled for construction, and the

system generated lists of raw materials and parts needed to produce the particular

trailer.  (Id. at 31.)  Based on these lists, she prepared work orders and distributed

them to the appropriate supervisors in the plant.  (Id.)  She also issued change

orders to the purchasing and production departments when the engineering

department changed something on a work order.  (Id. at 34.)  Riddle also

performed a number of clerical duties; for instance, she was responsible for

various types of scheduling, reporting, and log-keeping, for receiving work orders

from engineering and issuing them to production, and for assembling individual

manuals for the specially designed trailers.  (Riddle Dep. at 13.)  Donna Smith, the

---

run as a separate company.  (Id.)

production control clerk, reported to Riddle and worked closely with her in the production control department.  (Id. at 14, 36.)  Riddle's supervisors were Paul King, FSI plant manager, and Paul Fincher.  (Id. at 16.)  Fincher issued a verbal warning to Riddle for an incident that occurred on May 19, 1999.  (FSI Personal Action/Discipline Form (May 19, 1999).)  The incident leading to this warning occurred when Fincher asked Riddle to come to his desk, and she told him that it was just as close for him to come to her.  (Id.; Riddle Dep. at 19-20.)  When Riddle responded to his second request by coming to his desk, Fincher reported that she was "very angry."  (Id.; FSI Personal Action/Discipline Form (May 19, 1999).)  Riddle testified that she felt Fincher did not like women and that he had made a comment that he had never worked with women and did not know how to deal with them.  (Riddle Dep. at 22-23.)  Apparently, Fincher was generally hated by his fellow employees at FSI because of his attitude towards them.  (Breeden Dep. at 53-55.)

Around January of 2000, James Wilfore, president of Fontaine Trailer Company, FSI's parent company at the time, asked Richard Norman, president of FSI, and King, FSI's plant manager at the time, to resign because of their poor job performance.  (Wilfore Dep. at 16-17.)  Wilfore testified that Norman had lost the company millions of dollars on some trailers and that the company "was not

headed in the right direction" under Norman's leadership.  (<u>Id.</u>)  Norman had hired King, and King hired Riddle.  (Wilfore Dep. at 17; Riddle Dep. at 12.)

Shortly after Norman and King were removed from their positions, in an effort to "straighten [things] out" at the company and reduce the salary overhead that Norman had allowed to grow, Wilfore made the decision to terminate employees who were not absolutely necessary to the plant's functioning.  (Wilfore Dep. at 29-30.)  To accomplish this goal, Wilfore instructed William Breeden, the new plant manager, to make a list of the employees he thought should be terminated, and Wilfore would make a final decision on who to discharge. (Wilfore Dep. at 29-30; Breeden Dep. at 39-40; <u>see also</u> Dover Dep. at 30.) Breeden selected Riddle, along with three other employees - Bob Corfman, Pat Burt, and Howard Hassel.[5]  (Breeden Dep. at 41-44.)  Wilfore testified that he decided to terminate Riddle because he felt that she and Donna Smith did essentially the same job, and Smith had been with the company longer.  (Wilfore Dep. at 36-37.)  Several other employees, some of whom were part-time, were also terminated as part of the reduction in force.  (Id. at 53.)  Their responsibilities were largely absorbed by remaining employees, although several new employees were

---

[5]Riddle was 61 years of age at the time she was terminated.  Corfman, Burt, and Hassel, all males, were 58, 50, and 48 years of age, respectively, at the time they were terminated.  (Def.'s Verified Resp. to Pl.'s First Interrogs. 5-6.)

eventually hired to take over some of their former job duties.  (Id. at 53-56.)

On or about February 8, 2000, Riddle was terminated by FSI.  (Compl. ¶ 5; see Riddle Dep. at 58.)  Max Dover, the human resources manager for FSI, explained to Riddle that she was not being terminated because of poor job performance but because the company was being downsized.  (Riddle Dep. at 109-10; Dover Dep. at 23, 33.)  Dover was the person who informed Riddle she was being terminated even though Breeden and Wilfore had actually made the decision to terminate her.  (Dover Dep. at 30.)

Riddle testified that she was replaced by Randy Starnes, a younger male. (Riddle Dep. at 110.)  After Riddle was terminated, Wilfore promoted Randy Starnes to manage production control.[6]  (Wifore Dep. at 34.)  Starnes had been with FSI for several years and had previously worked in engineering as a designer. (Id. at 34, 71.)  His job title in the production control department was master scheduler.  (Breeden Dep. at 64.)   As master scheduler, Starnes' primary responsibility was the same as Riddle's:  he administered the scheduling and inventory control system for the plant.  (Wilfore Dep. at 35, 70-76; Breeden Dep.

---

[6] Wilfore apparently did not think Starnes was a replacement for Riddle because he did not think Riddle held a supervisory position.  (Wilfore Dep. at 33.)  He thought she and Donna Smith both held clerk positions in production control.  (Id.)  However, because the court will view the facts in the light most favorable to plaintiff, it will assume, without deciding, that Starnes was given a position substantially similar to that which Riddle previously held because of the similarity of their job responsibilities.

at 79-80; Dover Dep. at 76.)

Riddle also testified that Joshua Walker assumed some of her former duties in production control.  (Riddle Dep. at 91.)  Apparently, after Riddle was terminated, Walker was transferred from the engineering department to production control for a few months before ultimately being transferred to accounting. (Breeden Dep. at 86-90; <u>see</u> Personnel Action Requests for Joshua Lee Walker.) Riddle said that someone at FSI informed her of this after she left, and she was not sure to what extent or for how long Walker assumed part of her former duties. (Riddle Dep. at 91.)  Carol McCugh, who came from outside the plant, was hired as a data input clerk for the production control department in July 2000 and took over some of Riddle's former duties.  (Breeden Dep. at 47-48, 114; Def.'s Verified Resp. to Pl.'s First Interrogs. 3-5.)  Defendant admits that Randy Starnes, Joshua Walker, Carol McCugh, and Donna Smith all assumed some of Riddle's duties after her termination.  (Breeden Dep. at 114; Def.'s Verified Resp. to Pl.'s First Interrogs. 3-5.**)**

## IV. Applicable Substantive Law and Analysis

Plaintiff's complaint alleges that she was terminated because of her age in violation of the ADEA and because of her gender in violation of Title VII. Defendant's motion for summary judgment, as amplified in its brief in support

thereof, asserts that (1) plaintiff cannot establish a prima facie case of circumstantial discrimination and (2) plaintiff cannot rebut defendant's articulated, non-discriminatory reason for terminating her.  (See generally Def.'s Br. Supp. Summ. J.)

In cases such as this one where there is no direct evidence of discrimination, the court considers whether plaintiff has presented sufficient circumstantial evidence to create a jury question using the framework the U.S. Supreme Court articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981).  Jackson v. Alabama State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005); Combs v. Plantation Patterns, 106 F.3d 1519, 1527 (11th Cir. 1997).  The McDonnell Douglas/Burdine framework applies to both age and gender discrimination cases.  Kelliher v. Veneman, 313 F.3d 1270, 1275 (11th Cir. 2002).  Under the framework, the plaintiff bears the burden of establishing a prima facie case of discrimination. Jackson, 405 F.3d at 1289.  Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action.  Id.  If the employer meets this burden, the presumption of discrimination is eliminated, and the plaintiff must show that the defendant's articulated reason for the adverse employment action is merely a

pretext for discrimination.  Id.  Each of plaintiff's claims is discussed separately
below using this framework.

## A. Age Discrimination Claim

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to
discharge any individual or otherwise discriminate against any individual with
respect to his compensation, terms, conditions, or privileges of employment,
because of such individual's age."  29 U.S.C. § 623(a)(1).  In cases brought under
the ADEA, the plaintiff has the burden of proving by a preponderance of the
evidence that age was a determinative factor, although it need not be the only
factor, in the employer's decision to terminate her employment.  See Anderson v.
Savage Lab., Inc., 675 F.2d 1221, 1223-24 (11th Cir. 1982).

## 1.  Plaintiff's prima facie case

To establish a prima facie case under the ADEA when the defendant argues
that there has been a reduction in force ("RIF") or the elimination of a position, a
plaintiff must show (1) that she was in a protected age group and was adversely
affected by an employment decision, (2) that she was qualified for her current
position or to assume another position at the time of discharge, and (3) evidence
by which a fact-finder could reasonably conclude that the employer intended to
discriminate on the basis of age in reaching its employment decision.  Williams v.

<u>Vitro Serv. Corp.</u>, 144 F.3d 1438, 1441 (11th Cir. 1998); <u>Jameson v. Arrow Co.</u>, 75 F.3d 1528, 1532 (11th Cir. 1996).

Defendant does not dispute that plaintiff has established the first and second elements of her prima facie case. Her employment was terminated, which constitutes an adverse employment action, and she was over the age of 40 at the time, which means she was a member of a protected age group. Defendant admits that plaintiff was qualified for her current position at the time she was terminated. It is therefore irrelevant whether she was qualified to assume another position because she only has to prove *either* that she was qualified for her current position *or* that she was qualified to assume another position; she does not need to prove both. <u>Williams</u>, 144 F.3d at 1442.

Defendant disputes the existence of the third element of plaintiff's prima facie case: whether there is evidence by which a fact-finder could reasonably conclude that the employer intended to discriminate on the basis of age in reaching its decision to terminate plaintiff. To show intentional discrimination on the part of the employer, a plaintiff must present evidence that would allow a fact-finder "'to conclude either (1) that defendant consciously refused to consider retaining a plaintiff because of his age, or (2) defendant regarded age as a negative factor in such consideration.'" <u>Allison v. Western Union Tel. Co.</u>, 680 F.2d 1318, 1321

(11th Cir. 1982) (quoting <u>Williams v. Gen. Motors Corp.</u>, 656 F.2d 120, 130 (5th Cir. 1981)).

Because the court considers the evidence in the light most favorable to the plaintiff and is mindful of the fact it should "generally eschew an overly strict formulation of the elements of a prima facie case, particularly in age discrimination cases," <u>Maddow v. Procter & Gamble Co., Inc.</u>, 107 F.3d 846, 851 (11th Cir. 1997) (internal quotations omitted), the court will assume, without deciding, that plaintiff has established a prima facie case.  Neither party has presented case law indicating whether plaintiff has presented sufficient evidence by which a fact-finder could reasonably conclude that the employer intended to discriminate on the basis of age, and the court has not found any case law that would be instructive in this particular case.  However, because the burden of establishing a prima facie case is a light one, plaintiff's evidence showing that all of the FSI employees who were part of the reduction in force were members of the protected class[7] and that the employees who assumed her former duties were all younger than she was is sufficient for the court to assume, without deciding, that

---

[7] All of the FSI employees whose positions were eliminated as a result of the reduction in force were members of the protected class.  (Def.'s Verified Resp. to Pl.'s First Interrogs. 5-6.) They are as follows:  Richard Norman, 62; Paul King, 59; Robert Corfman, 58; Patrick Burt, 50; Paul Fincher, 45; Howard Hassell, 48; and Wanda Riddle, 61.  (<u>Id.</u>)

she has shown evidence that FSI intended to discriminate against her on the basis of her age.

## 2.  Defendant's articulated non-discriminatory reason and plaintiff's rebuttal

Even assuming plaintiff has proven a prima facie case of age discrimination, defendant may still be entitled to summary judgment if it rebuts plaintiff's prima facie case with evidence of a legitimate, non-discriminatory reason for plaintiff's discharge.  Young v. Gen. Foods Corp., 840 F.2d 825, 828-29 (11th Cir. 1988). This is because although "'establish[ing] a prima facie case creates a rebuttable presumption of discrimination[,] this presumption alone does not create an inference that a material fact, sufficient to create a jury question, is in issue.'"  Id. at 829 (quoting Pace v. S. Ry. Sys., 701 F.2d 1383, 1391 (11th Cir. 1983)).  The employer cannot meet its burden of articulating a legitimate, non-discriminatory reason for the employment action by mere argument; instead, it bears the burden of production and must present actual evidence of a legitimate reason for its decision.  Steger v. Gen. Elec. Co., 318 F.3d 1066, 1075 (11th Cir. 2003). However, the defendant does not have to prove that it was actually motivated by its articulated reason because the burden of persuasion remains with the plaintiff. See Burdine, 450 U.S. at 254; see also Hill v. Seaboard Coast Line R. Co., 767 F.2d 771, 773-74 (11th Cir. 1985).

In the instant case, FSI's articulated legitimate, non-discriminatory reason for terminating plaintiff is that it was undergoing a reduction in force among salaried employees as a result of some financial and managerial problems it had been experiencing.[8]  FSI has presented evidence that Riddle's position was eliminated because she was the less senior of two employees in her department who were performing essentially the same functions.  Donna Smith had been at FSI longer than Riddle, and although they had different job titles, based on their job descriptions and Riddle's testimony,[9] they had substantially similar job responsibilities - clerical duties related to production control.  Based on this evidence, FSI has articulated a legitimate, non-discriminatory reason for terminating Riddle.

Because defendant articulated a legitimate, non-discriminatory reason for terminating Riddle, the burden shifts back to plaintiff to show by significantly probative evidence that the proffered reason is a mere pretext for discrimination. Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1228 (11th Cir. 1992); Anderson,

---

[8] The court notes that in Defendant's Response to Plaintiff's First Interrogatories they cite Riddle's job performance as the reason for her termination.  (Def.'s Verified Resp. to Pl.'s First Interrogs. 5-6.)  Defendant, however, did not articulate job performance as the actual reason for her termination.  Therefore, the court did not consider it.

[9] Riddle testified in her deposition that Smith could perform all of her job tasks and vice versa.  (Riddle Dep. at 36.)

675 F.2d at 1224.  To do this, "plaintiff must demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find [all of those reasons] unworthy of credence.'" Watkins v. Sverdrup Tech., Inc., 153 F.3d 1308, 1314 (11th Cir. 1998) (quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997)).  Once the district court decides that a reasonable fact-finder "could conclude that the employer's proffered reasons were not the real reason for its decision, the court may not preempt the jury's role of determining whether to draw an inference of intentional discrimination from the plaintiff's prima facie case taken together with rejection of the employer's explanations for its action." Combs, 106 F.3d at 1538.  At that point, summary judgment is inappropriate and the case should go to a jury.  Id.

Plaintiff argues that defendant's articulated reason for terminating her is pretextual because FSI was not actually undergoing a RIF but instead arbitrarily fired a group of older employees and replaced them with younger ones.  (See Pl.'s Opp'n to Def.'s Mot. Summ. J. 19.)  As evidence of this, plaintiff points out that the production control department now contains three employees - Randy Starnes, Donna Smith, and Carol McCugh - instead of two - Riddle and Smith.  Riddle also maintains that although FSI gave him the new job title of "Master Scheduler,"

Starnes assumed her former position with the exception of her clerical duties, which were given to two other younger employees (first Walker on a temporary basis and then McCugh on a permanent one). Plaintiff further argues that, although FSI was supposedly terminating employees whose positions "weren't necessary, nor would their position be necessary in the near future," (Wilfore Dep. at 29-30,) FSI replaced her almost immediately. She was fired on or about February 8, 2000, and sometime between then and the beginning of April, Walker began working for Starnes in the production control department doing data input.[10] Also, in July 2000, which appears to be soon after Walker was transferred out of production control to accounting, FSI hired a permanent employee, McCugh, to join Smith as a production control clerk.

The Eleventh Circuit has held that "the fact a company eliminates some positions in a RIF while simultaneously hiring younger workers in other positions is not sufficient to show that the RIF was prextextual. A plaintiff must also show that the new positions were similarly situated to those that were eliminated in the

---

[10] The Personnel Action Request for Walker dated April 7, 2000 lists him as being in the production control department with Starnes as his supervisor, although his title was "Accounting Assistant." (Personnel Action Request for Joshua Lee Walker (April 7, 2000).) On January 13, 2000, Walker's title was "Engineering Assistant." (The Marmon Group Policy on Antitrust Laws, signed by Joshua Walker (Jan. 13, 2000).). It is not clear at what point Walker was transferred to production control and Breeden is unsure when it happened. (Breeden Dep. at 87-89.)

RIF." Beaver v. Rayonier, Inc., 200 F.3d 723, 728 (11th Cir. 1999); Watkins, 153 F.3d at 1315-16.  In Beaver, the plaintiff could not meet this standard because the positions eliminated by the RIF were salaried employees in supervisory positions, the new hires were hourly employees not in supervisory positions, and the plaintiff could not show that the new employees had assumed any of the duties of either his former position or any other supervisor position eliminated in the RIF.  Beaver, 200 F.3d at 728-29.  See also Watkins, 153 F.3d at 1315 ("other than identifying the 'Associate Principal Engineer' status of two new hires - a title that merely reflected those engineers' pay grade - plaintiffs did not identify any new employees similarly situated to themselves").

In the instant case, plaintiff has presented evidence that the new positions FSI created when it transferred Starnes and Walker into production control and hired McCugh are similarly situated to her former position, which was eliminated as part of the RIF.  Although Starnes was given the newly created job title of master scheduler, it appears that he performs many of the same job duties Riddle previously performed.  Specifically, one of Riddle's most significant job responsibilities was administering the MRP system, which was the scheduling and inventory control system FSI was running when she worked there.  When Starnes was transferred to the production control department, he became responsible for

administering the MRP system and the subsequent scheduling and inventory control system that replaced it, EMS.  (Wilfore Dep. at 35, 70-76; Breeden Dep. at 79-80; Dover Dep. at 76.)  Starnes also issues work orders and is responsible for scheduling, both tasks that Riddle previously performed.  Thus, while there are differences between Starnes' position as master scheduler and Riddle's previous position as production control supervisor, Riddle has shown that her former position and Starnes' current one are similar enough to raise doubts about whether her position was actually eliminated as part of a RIF.  In addition, Riddle has shown that her former position was similarly situated to those of Walker and McCugh.  Essentially, while Starnes assumed Riddle's former scheduling and inventory duties, Walker and subsequently McCugh appear to have assumed her clerical duties.  (Breeden Dep. at 48; Dover Dep. at 40, 100.)  The fact that Riddle's former duties, which were covered by her one position, are now spread across two new positions - Starnes' and McCugh's - is further evidence that her position was "eliminated" based on pretext and not because of an actual RIF.

Riddle also points to the fact that Breeden and Dover were unaware of FSI's financial problems as evidence that the company was not undergoing a true RIF.  This is not sufficient evidence that the RIF was a pretext for discrimination.  Apparently, Wilfore, the president of the Fontaine trailer group of companies, felt

that it was necessary, as a result of "some real bad decisions [on the part of former president Richard Norman] that cost us millions of dollars on some trailers," to institute a RIF that included Norman as well as the former plant manager and several other employees, including Riddle.  (Wilfore Dep. at 16.)  The fact that Breeden and Dover were unaware of FSI's financial status is irrelevant.  Wilfore may simply have decided not to tell them about the company's losses, but they were aware that there was going to be some sort of restructuring or RIF after Norman and King were removed from their positions.  This evidence is not sufficient to show pretext because an "employer is free to choose whatever means it wants, so long as it is not discriminatory, in responding to bad economic conditions."  Wilfore chose to implement a RIF at the Springville plant.  His not sharing the details of the company's finances with his lower level employees does not indicate that he was trying to discriminate.  It was simply a business decision, and, as the Eleventh Circuit has noted, "'the ADEA is not a vehicle for reviewing the propriety of business decisions.'"  Watkins, 153 F.3d at 1317 (quoting Furr v. Seagate Tech., Inc., 82 F.3d 980, 986 (10th Cir. 1996)).

However, Riddle's evidence that everyone who was terminated during the RIF was in the protected class and her evidence that FSI hired and transferred people to positions similarly situated to hers right after her termination, while

perhaps not sufficient to actually prove FSI's proffered reason is pretextual, is

definitely probative enough to create a question of fact for a jury. Accordingly,

summary judgment is denied with regard to Riddle's ADEA claim.

## B. Gender Discrimination Claim

Title VII of the Civil Rights Act of 1964 provides that "[i]t shall be an

unlawful employment practice for an employer . . . to discharge any individual, or

otherwise to discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment, because of such individual's race,

color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). As noted

above, sex discrimination cases under Title VII, like ADEA cases, are analyzed

using the McDonnell Douglas/Burdine framework.

The same modified prima facie case that applies to RIFs in ADEA cases

also applies in Title VII cases. Jameson, 75 F.3d at 1533 n.3. Thus, to establish a

prima facie case of sex discrimination when there has been a RIF, plaintiff must

show (1) that she was in a protected class and was adversely affected by an

employment decision, (2) that she was qualified for her current position or to

assume another position at the time of discharge, and (3) evidence by which a fact-

finder could reasonably conclude that the employer intended to discriminate on the

basis of sex in reaching its employment decision.  See Williams v. Vitro Serv. Corp., 144 F.3d 1438, 1441 (11th Cir. 1998); Jameson, 75 F.3d at 1532.

Just as with the age discrimination claim, defendant does not dispute that plaintiff has established the first and second elements of her prima facie case.  She is a member of a protected class, in this case because she is a woman,[11] and her employment was terminated.  In addition, defendant concedes plaintiff was qualified for the position she held at the time she was terminated, which, as discussed above, is sufficient to establish the second element of the prima facie case.

Once again, defendant disputes the existence of the third element of plaintiff's prima facie case.  Plaintiff has failed to establish this element of her prima facie case for gender discrimination.  She was the only female who was fired as part of the RIF, and her job responsibilities were permanently absorbed by two females (Smith and McCugh) and one male (Starnes), even though two males (Starnes and Walker) and one female (Smith) were splitting them for a short amount of time after she was terminated.  Fincher's comments that he had never worked with women and did not know how to deal with them are also insufficient

---

[11] Both genders are protected equally under Title VII.  Therefore, everyone is a member of a protected class.

to establish the third element of the prima facie case, especially in light of the fact that Fincher generally seemed to have bad attitude towards everyone at FSI, not just the women.  Based on plaintiff's evidence, a fact-finder could not reasonably conclude that the employer intended to discriminate on the basis of sex in reaching its employment decision.  Because plaintiff cannot establish a prima facie case of gender discrimination, no issues of material fact remain as to that claim and defendant is entitled to judgment as a matter of law.

In summary, the court finds that there are material issues of fact as to plaintiff's age discrimination claim and defendant is not entitled to judgment as a matter of law on that claim.  However, there are no material issues of fact as to plaintiff's gender discrimination claim and defendant is entitled to judgment as a matter of law on that claim.  A separate order will be entered.

**DONE** this the 13th day of October, 2005.

**VIRGINIA EMERSON HOPKINS**
United States District Judge